United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

JASON P. F.,[1]
Plaintiff,
v.
SSA COMMISSIONER, et al.,
Defendants.

Case No. 25-cv-05738-RMI

**ORDER RESOLVING SOCIAL SECURITY APPEAL**

Re: Dkt. Nos. 12, 14

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that Plaintiff was not disabled under Title II of the Social Security Act. *See* Admin. Rec. ("AR") at 20.[2] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. (AR 7) As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 9, 10), and both parties have filed briefs (dkts. 12, 14, 15). For the reasons stated below, the decision of the ALJ is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this Order.

## I. RELEVANT FACTS & BACKGROUND

Plaintiff has long struggled with back and neck pain (cervicalgia), as well as a rare neurological disorder that impacts the spinal cord fluid (syringomyelia). (AR 827, 830, 858, 1186–

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed at Docket Entry #7.

90, 2079, 2081) The pain causes the feeling of pins and needles in his upper torso, weakness in his right arm, muscle tightness, shoulder pain, and knots in his neck. (AR 826, 862–63) His back pain stems from an injury in military boot camp in 2006. (AR 826) Over many years of treatment, Plaintiff consistently sought care for chronic pain in his neck and back. (AR 83, 87, 89, 326, 375–76, 435–561) His chronic pain eventually led to an opioid dependence diagnosis. (AR 2075)

He has been diagnosed with chronic depression and PTSD. (AR 827, 1052, and 1186–90) In November 2022, he reported feeling "tired, upset, unmotivated, and depressed daily." (AR 827) In December 2021, his depression was reported to be "moderately severe" with a score of 17 out of 27. (AR 1160) His pain and resulting depression make basic chores, socialization, sleep, and work difficult to impossible. (AR 31, 83, 2171)

Plaintiff worked for three companies as a repairman after his year of military service but had problems with absenteeism due to his chronic pain. (AR 47) Eventually, he ceased working and filed his Title II application, alleging disability during a three-month window beginning on October 1, 2021, and extending to December 31, 2021. (AR 23) That claim was initially denied on July 13, 2023, and upon reconsideration on April 12, 2024. (*Id.*) Thereafter, Plaintiff filed a written request for a hearing, which the agency received on April 24, 2024. (*Id.*)

At the hearing, Plaintiff testified that he was unable to work full-time during the relevant time period because his neck pain was "just so severe, it was stopping [him] from being able to do basic things like just sitting . . . or standing or walking." (AR 59) Up to three times a week, he had to reschedule jobs due to his pain. (AR 62) He suffered migraines that occurred almost every week. (AR 64) He had to take Advil and Tylenol "around the clock" and take breaks in between clients to get through each workday. (AR 66) Due to his pain and fatigue, Plaintiff had interpersonal issues with coworkers, clients, and his wife. (*Id.*)

The ALJ engaged in the required five-step sequential evaluation process to determine whether Plaintiff qualified for disability benefits. (AR 23–34) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step One, the ALJ determines whether the claimant has engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). Here, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his

United States District Court
Northern District of California

last date insured. (AR 25)

At Step Two, the ALJ determines whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ determined that Plaintiff had the following severe impairments: degenerative changes of the cervical spine; degenerative changes of the lumbar spine; migraine headaches; major depressive disorder; insomnia secondary to chronic pain; PTSD; and a history of syringomyelia. (AR 25)

At Step Three, the ALJ determines whether the severity of claimant's impairment or combination of impairments meets or medically equals the criteria of any listed impairments. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d). Here, the ALJ found that none of Plaintiff's conditions or combination of conditions met or equaled any listed impairment. (AR 25–26)

At Step Four, the ALJ determines the claimant's residual functional capacity ("RFC") to still perform past relevant work. The RFC describes what the claimant can still do despite his or her physical, mental, and other limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). In formulating Plaintiff's RFC, the ALJ found that Plaintiff could "perform light work as defined in 20 CFR 404.1567(b) except the claimant could lift and carry twenty pounds occasionally and ten pounds frequently. The claimant could sit for six hours and stand or walk for six hours in an eight-hour workday. The claimant could frequently crawl, crouch, kneel, stoop, balance, or climb ramps, or stairs. The claimant could never climb ladders, ropes, scaffolds. The claimant could reach overhead occasionally. The claimant could concentrate, persist, and pace for simple work. The claimant could occasional interaction with the general public, coworkers, and supervisors. The claimant could tolerate occasional changes to routine work setting." (AR 27) In reaching this determination, the ALJ dismissed Plaintiff's testimony about the intensity, persistence, and limiting effects of his back and neck pain and his mental limitations because it was inconsistent with the medical evidence or record. The ALJ then found that Plaintiff could not perform his past relevant work as an overhead garage door repairman. (AR 32)

At Step Five, the ALJ determines whether the claimant can engage in other types of

United States District Court
Northern District of California

substantial gainful work that exists in the national economy based on the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). Here, after consulting with the VE, the ALJ found that Plaintiff could perform the representative occupations of dining room attendant, cashier, merch marker, mail sorter, and routing clerk. (AR 33) The ALJ therefore concluded that Plaintiff was not disabled. (AR 34)

## II. LEGAL STANDARD

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## III. DISCUSSION

### A. Plaintiff's Subjective Testimony

Plaintiff testified to his functional limitations based on pain, physical limitations, and mental health. "To determine whether a claimant's testimony regarding subjective pain or symptoms is

credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (citation modified).

Here, the ALJ did not identify with the requisite specificity the parts of Plaintiff's testimony that she found not credible and the evidence that contradicted the testimony. As such, this court cannot engage in meaningful judicial review, so further proceedings are necessary.

Following the boilerplate introductory remark, the ALJ's discussion of Plaintiff's physical and mental impairments contains "a relatively detailed overview of [Plaintiff's] medical history." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020). But providing a medical summary without any explanation as to *which* pieces of Plaintiff's testimony are not credible and *which* pieces of specific evidence contradicts that testimony is insufficient to allow this court to review the ALJ's determinations. *Id.* at 1277 (holding that the ALJ needed to "identify what parts of the claimant's testimony were not credible and why") (citation modified); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155 (9th Cir. 2008) (rejecting a specific portion of the plaintiff's testimony "that he can lift only 10 pounds occasionally" only after specifically referencing a doctor's "contradictory opinion that he can lift up to 10 pounds frequently").

Additionally, the Commissioner's brief invites the court to gap-fill the ALJ's reasoning by proposing specific medical evidence that tends to contradict specific portions of Plaintiff's testimony. *See* Def.'s Opp'n 2–4. However, judicial review is "constrained to [] the reasons the ALJ asserts." *See* 980 F.3d at 1278 (citation omitted). Indeed, Plaintiff devotes a paragraph of his Reply arguing about whether the ALJ relied on any of the reasons put forth by the Commissioner. Pl,'s Reply 1–3. This underscores the problem with and deficiency in the ALJ's opinion. Moreover, there are confusing references in the opinion that appear to imply determinations, but do not specifically make them. For instance, at the end of the ALJ's discussion on Plaintiff's subjective pain and physical limitations testimony, the ALJ notes, "Although the claimant reported he had difficulty

United States District Court
Northern District of California

interacting with others. [sic] He was not interested in physical therapy, medication, or group therapy." (AR 29) This does not appear related to Plaintiff's testimony of limiting pain or physical limitations, and the court notes the consistency in Plaintiff's report that he had difficulty in interacting with others and his disinterest in group therapy. This record, cited by the ALJ here (and throughout the opinion), was a 90-minute psychiatric intake consultation. (AR 1185–89) Thus, even were the court to attempt to infer the ALJ's reasons for rejecting Plaintiff's testimony, which would be error, the task is rendered impossible by the ALJ's incongruence.

As to Plaintiff's testimony regarding his mental health, the ALJ lists Plaintiff's impairments of major depressive disorder and PTSD and then states the following:

> In November 2021, the claimant reported anhedonia and depression almost every day (Exhibit 3F/370). At his mental status examination in December 2021, the claimant reported he did not have any problems caring for himself or interacting with others (Exhibit 3F/372). The claimant's hygiene, eye contact, and speech were normal (Exhibit 3F/372). The claimant was cooperative (Exhibit 3F/372). At his appointments, the claimant's memory was unimpaired. His cognition was intact. His general fund of knowledge was satisfactory. His insight, judgment, and impulse control were within normal limits (Exhibit 3F/373).

(AR 29) As before, this recitation provides the court with nothing to review. Again, the ALJ cites several times to the same singular intake consult form but fails to explain how or why things like Plaintiff's hygiene, intact cognition, and unimpaired memory relate to his testimony of disabling function due to his major depressive disorder and PTSD.

In short, it is not clear that the ALJ's cited normal findings are relevant to, let alone inconsistent with, Plaintiff's statements about the severity of his physical and mental health issues. Plaintiff being "well appearing and not in acute distress," at least on one day, does not undermine his allegations of pain—he does not allege that his neck/back pain directly interfere with these functions; no physician opines as such; and the ALJ does not explain the connection between the two.

The ALJ has failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony. Given the discrepancies outlined above, the ALJ's dismissal of Plaintiff's testimony cannot be said to be based upon substantial evidence. Because crediting Plaintiff's testimony would

necessarily alter his RFC, the error is not harmless.

**B. Weight to Medical Opinions**

Plaintiff asserts error as to the ALJ's handling of the medical opinions of Dr. Widger, Dr. Pearson, and Evaluator Moon.

**1. Dr. Widger**

Dr. Widger completed a headaches disability questionnaire for the Department of Veterans Affairs ("VA"). In the questionnaire, Dr. Widger notes, among other things, that Plaintiff's migraines occurred one to two times per month, lasting one to two days for each episode, during which Plaintiff was completely incapacitated. (AR 232–38) The ALJ's opinion makes no mention of this report. Plaintiff argues this is reversible error, while the Commissioner insists that this must simply be a rendition of Plaintiff's self-reports and not a medical opinion that the ALJ was required to address or weigh.

The Commissioner's argument belies the nature of the form, which specifically states that the information within will be considered by the VA in making its disability determination. (AR 232) While the VA's ultimate disability determination is not relevant, Dr. Widger's opinion here is. This is a case where the ALJ found migraines to be a severe impairment at step two; outside of just mentioning a migraine diagnosis, the ALJ completely fails to further discuss the impairment and its impact on the RFC. This is despite the fact that the Administrative Record in this case mentions migraines at least 100 times, including records of his prescriptions for the malady. (*See, e.g.*, AR 1239, 1241, 1301)

Thus, the ALJ erred, and the error is not harmless as the limitations described by Dr. Widger could have a drastic effect on the RFC and the VE's testimony.

**2. Dr. Pearson**

The ALJ began his discussion of Dr. Pearson's opinion with: "Dr. Pearson stated the claimant had mild to moderate limitation in interacting appropriately with the general public, a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. He also stated the claimant had moderate to marked ability to

tolerate normal levels of stress (Exhibit 7F).” (AR 32) The ALJ continued:

> This opinion is not persuasive. It is not consistent with any other opinion. It is not supported by the evidence. The evidence indicates the claimant has major depressive disorder and post-traumatic stress disorder. In November 2021, the claimant reported anhedonia and depression almost every day (Exhibit 3F/370). However, his mental status examination in December 2021, the claimant reported he did not have any problems caring for himself or interacting with others (Exhibit 3F/372). The claimant's hygiene, eye contact, and speech were normal (Exhibit 3F/372). The claimant was cooperative (Exhibit 3F/372). At his appointments, the claimant's memory was unimpaired. His cognition was intact. His general fund of knowledge was satisfactory. His insight, judgment, and impulse control ere [sic] within normal limits (Exhibit 3F/373).

(*Id.*) As with Plaintiff’s subjective testimony, the ALJ dismissed a medical opinion based solely on a single mental health intake consult. That is the story of this opinion—the ALJ rejects all of Plaintiff’s medical testimony and opinion evidence (including Drs. Widger, Allen, and Pearson) based on this single consult visit and finds persuasive the state agency consultant opinion based solely on this same form. (AR 31) The ALJ even stated that the State Agency’s opinion is not consistent with any other opinion of record but that it is supported by three pages of this single consult visit. (*Id.*) That consult visit form is cited 29 times throughout this opinion and is the very definition of a cherry-picked record and an ALJ “cannot cherry pick the evidence which supports [its] finding while ignoring other contradictory evidence.” *Fidel R.P. v. O'Malley*, 754 F. Supp. 3d 986, 994–95 (N.D. Cal. 2024). The ALJ’s rejection of Dr. Pearson’s opinion is not supported by substantial evidence.

**3. Evaluator Moon**

Moon completed a work tolerance test and opined, among other things, that Plaintiff could only perform part-time employee paced work. (AR 1476) The ALJ found portions of Moon’s opinion to be persuasive but rejected his opinion that Plaintiff could only perform part-time work. Plaintiff asserts error, claiming that the ALJ failed to adequately articulate her reasoning for rejecting that portion of Moon’s opinion. The Commissioner points to the ALJ’s notation that the opinion is less reliable because it lies outside the relevant time period because Plaintiff suffers degenerative changes of his lumbar spine.

Medical opinion evidence outside the relevant time period is of limited relevance. *See*

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Here, the ALJ gave Moon's opinion some weight and rejected the rest. This is sufficient where Plaintiff has a degenerative condition, and the opinion does not opine as to the relevant time period.

**IV. CONCLUSION**

Accordingly, this case is **REMANDED** for further proceedings to address the errors identified herein. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 25, 2026

ROBERT M. ILLMAN
United States Magistrate Judge